UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZELJKO SABO,<br><br>                    Plaintiff,<br><br>v.<br><br>FISKARS BRAND, INC., dba GERBER<br>LEGENDARY BLADES; and DOES 1<br>through 50, inclusive,<br><br>                    Defendants. | Case No. 2:12-cv-00503-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

**INTRODUCTION**

Defendant Fiskars Brand, Inc., dba Gerber Legendary Blades (Fiskars), filed a

motion on March 29, 2013, seeking an order from the Court declaring that Idaho law, not

California law, governs this product liability action. Sabo filed this matter in California,

and later Fiskars removed the matter to this Court on August 8, 2011. The application of

Idaho law would impact Zeljko Sabo's claim for noneconomic damages because Idaho

Code § 6-1603(1) establishes a $250,000 cap, whereas California law has no damages

cap. The application of Idaho law also may make proving liability more difficult due to differing burdens of proof. Fiskars, therefore, argues for the application of Idaho law, while Sabo contends that, because he is a California resident, California law should apply given California has the more significant interest in protecting its residents from harm from defective products.

The Court conducted a hearing on July 16, 2013, and heard oral argument from the parties. After carefully considering the parties' arguments, their briefs, the record, and the relevant authorities, the Court will recommend that Fiskars's motion to apply Idaho law be granted.

## BACKGROUND

Sabo filed this action against Fiskars in the Superior Court of the State of California, for the County of Sacramento, on July 1, 2011. Neither party disputes that the matter was properly filed in California, because Sabo is a resident of Los Angeles County, California. Sabo and his wife maintain a home in Castaic, California, and consider that home their primary residence. Sabo purchased a second home in North Idaho in 1993, as well as a restaurant, Burger Heaven, in Rathdrum, Idaho. Sabo and his wife travel between California and Idaho.

At the time of the accident, Sabo and his wife had returned to Idaho to make repairs to the restaurant, and they were living in Idaho. Mr. Sabo purchased the flashlight that later exploded and caused his injuries in Idaho on September 2, 2009. The flashlight was manufactured and marketed by Fiskars. The accident occurred on September 12, 2009, when the flashlight, containing lithium batteries, allegedly spontaneously

combusted and exploded in Sabo's front pants pocket as he bent over. Sabo was exposed to flying glass shards, and fumes and smoke, which rose from the flashlight around his face and irritated his left eye. Sabo received medical care from Idaho providers. The Sabos's plans to return to California were delayed due to the accident, and they were living in Idaho at the time they filed the Complaint.

Fiskars is a large, national corporation with its principal place of business in Wisconsin. Fiskars removed the matter from California state court to the federal court in the Eastern District of California, and later moved to transfer the case to the District of Idaho. The California district court found that, although venue was proper in California, this action could have been brought in the District of Idaho because the accident that gave rise to Sabo's claim occurred here. (Ord., Dkt. 20 at 3.) The court found that a transfer was warranted for the convenience of the parties, the witnesses, and the interests of justice under the *Jones* factors.

Now, Fiskars advocates for the application of Idaho law, not California law, to gain the benefit of Idaho's cap on noneconomic damages and the potential higher burden of proof applied to products liability actions. Sabo objects, primarily advancing the argument that, as a California resident, he deserves the protections of California law.

**REPORT AND RECOMMENDATION - 3**

# ANALYSIS

## 1.    Applicable Law

Although not filed as such, the Court concludes that Idaho R. Civ. P. 56 applies to Fiskars's motion, and will treat it as a motion for partial summary judgment.[1] In its answer, Fiskars asserted that either Wisconsin, Idaho, or California law applies to limit Sabo's causes of action. (Ans. at 4, Dkt. 1-4.) In essence, Fiskars seeks partial summary judgment as to what law applies to Sabo's claims. *See, e.g., Jones v. Winnebago Industries, Inc.*, 450 F.Supp.2d 953, 959 (N.D. Iowa 2006) (considering choice of law issue under Rule 56). The issue of the appropriate choice of law is a question of law for the Court. *Jones*, 450 F.Supp.2d at 959; *see also McCann v. Foster Wheeler LLC*, 225 P.3d 516, 521 (Cal. 2010) (lower court considered choice of law issue in context of motion for summary judgment). Under Rule 56(a), summary judgment is appropriate if the moving party shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Although the parties dispute whether Sabo's permanent residence or domicile is California, the Court finds that this factual dispute is not material to the choice-of-law issue, as explained below.

Importantly, both parties agree that California's choice of law rules govern the analysis as to which law applies. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (a transfer under 28 U.S.C. § 1404(a) should produce but "a change of courtrooms," and not a change of law. This includes the original forum's (transferor's) choice-of-law rules). California applies the governmental interest analysis, and considers three steps.

---

[1] Thus, the Court makes a report and recommendation for review by the District Judge according to 28 U.S.C. § 636(b)(1)(B).

**REPORT AND RECOMMENDATION - 4**

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Sullivan v. Oracle Corp.*, 254 P.3d 237, 244-45 (Cal. 2011).

The Court proceeds from step one to step two only if it finds that the laws of each state are materially different. *Washington Mutual Bank v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001). Similarly, the Court proceeds from step two to step three only if it finds that both states have an interest in having its law applied. *Id*. at 1081. The burden is upon the movant seeking to establish the application of the foreign law. *Id.* Thus, only if the Court determines that "the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.* But if only one state has a legitimate interest in the application of its law and policy, and the other state has none, there is no real conflict; in that instance, the law of the interested state should be applied. *Offshore Rental Co. v. Continental Oil Co.*, 583 P.2d 721, 724 (Cal. 1978).

If the Court reaches step three and must make the comparative impairment analysis, the Court is instructed to determine "the relative commitment of the respective

states to the laws involved and consider the history and current status of the states' laws and the function and purposes of those laws." *Washington Mutual Bank*, 15 P.3d at 1081.

A.    *Do the Relevant Laws Differ?*

The Court first determines "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Sullivan*, 254 P.3d at 245.

First, Idaho imposes a cap on noneconomic damages. Idaho Code § 6-1603(1). In an action for damages for personal injury, a judgment for noneconomic damages may not exceed $250,000. The cap adjusts each year depending upon the percentage amount of increase or decrease by which the Idaho Industrial Commission adjusts the average annual wage. Idaho Code § 6-1603(1); Idaho Code § 72-409(2). California does not limit noneconomic damages in a case involving personal injury and product liability.[2]

Second, in reviewing the relevant product liability laws, Sabo construes the differences in California's substantive law and Idaho's substantive law more narrowly than the Court believes is appropriate. California's law governing product liability actions is sufficiently different from Idaho's law governing the same type of actions. Under California law, a manufacturer or retailer may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product. *Chavez v. Glock, Inc.*, 207 Cal.App.4th 1283, 1302 (Cal.App.2d 2012). A design defect exists when the product is built in accordance with

---

[2] At least one court has come to the conclusion that, in comparing Idaho's law imposing a cap on noneconomic damages to Iowa's law, which lacks any similar provision, the situation presented a true conflict. *Jones*, 460 F.Supp.2d at 964. In that case, the court went on to discuss the choice of law rules between Iowa and Idaho under Iowa's conflict of laws analysis. *Id*. at 954-65.

**REPORT AND RECOMMENDATION - 6**

its intended specifications, but the design itself is inherently defective. *Chavez*, 207 Cal.App.4th at 1302. In California, there are two tests for proving a design defect: the "consumer expectation test," and the "risk-benefit test." *Id.* at 1303.

Under California's consumer expectation test, a plaintiff may prove a design defect by demonstrating that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Id.* The test relies upon the implicit assumption that a product's presence in the market is, in itself, a representation that the product is fit to do safely the job for which it was intended. *Id.* "If the facts permit an inference that the product at issue is one about which consumers may form minimum safety assumptions in the context of a particular accident, then it is enough for a plaintiff, proceeding under the consumer expectation test, to show the circumstances of the accident and the objective features of the product which are relevant to an evaluation of its safety, leaving it to the fact-finder to employ [its] own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence. Expert testimony as to what consumers ordinarily 'expect' is generally improper." *Id.* (internal citations omitted.)

Alternatively, under California's risk-benefit test, products that meet ordinary consumer expectation nevertheless may be found defective if the design embodies an "excessive preventable danger."' *Id.* "To prove a defect under this test, a plaintiff need only demonstrate that the design proximately caused the injuries. Once proximate cause is demonstrated, the burden shifts to the defendant to establish that the benefits of the

challenged design, when balanced against such factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm." *Id.*

The two tests under California law present alternative theories of recovery, and are not mutually exclusive. *Id.*  The particular facts of the case determine whether a plaintiff may proceed under the consumer expectation test or whether design defect must be assessed solely under the risk-benefit test. *Id.* at 1310.

In contrast, to establish a case for negligent design or strict liability under Idaho law, a plaintiff must establish that (1) the product in question was defective, (2) the defect existed at the time the product left the manufacturer's control, and (3) the defective product was the proximate cause of the plaintiff's injuries. *Puckett v. Oakfabco, Inc.*, 979 P.2d 1174, 1179 (Idaho 1999). A manufacturer has a duty to design its product "so as to eliminate unreasonable risks of foreseeable injuries." *Id.* at 1179. A product is defective if it exposes a user or bystander to an unreasonable risk of physical injury. *Id. See also* Idaho Code § 6-1401 – § 6-1410.

Under Idaho law, a prima facie case may be proven by direct or circumstantial evidence of a malfunction of the product; the absence of evidence of abnormal use; and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant. *Farmer v. Internat'l Harvester Co.*, 553 P.2d 1306, 1311 (Idaho 1976). Generally, expert opinion testimony is necessary to establish causation, although opinion testimony is not necessary if "a legitimate inference of causation, drawn from competent evidence concerning the nature of the defects and type of injuries sustained," establishes

proof of causation. *Fouche v. Chrysler Motors Corp.*, 646 P.2d 1020, 1026 (Idaho Ct. App. 1982).

When comparing the two tests, Idaho's test is more objective than California's test, and carries a higher burden of proof. California's risk-benefit test contains a burden shifting provision that Idaho's test lacks. The parties agree that the substantive laws differ between California and Idaho. However, although Sabo concedes the noneconomic damage cap applicable in Idaho is a difference between the two states, Sabo contends that the product liability laws do not "substantially differ." Sabo prepared a chart showing the similarities between the two states' laws, and argues that there is no "true conflict."

But the court finds the product liability laws differ sufficiently for purposes of the first prong of the governmental interest test.[3] The test is not whether the laws differ "substantially," but whether the laws are materially different. The Court then analyzes whether there is a "true conflict" as part of the second step. The Court, in analyzing the two substantive provisions, finds that the applicable laws differ between the states of California and Idaho that it must proceed to step two of the analysis.

## B.   *Does a True Conflict Exist?*

Because the relevant state laws differ, the Court next "examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Kearney v. Salomon Smith Barney, Inc.*, 137

---

[3] And, although neither party addressed this, the Court cannot apply California's products liability law and Idaho's noneconomic damage cap. Sabo concedes the lack of any cap on noneconomic damages in California constitutes a material difference. Given *Jones*, the Court cannot conclude otherwise. *See* Note 2, supra. Even assuming, then, that the products liability laws are not different between the two states, the Court cannot sever the issues. The two statutes---the cap and the product liability law---go hand-in-hand in Idaho.

P.3d 914, 922 (Cal. 2006). In conducting this inquiry, the Court is to make its own determination "of [the relevant] policies and interests, without taking 'evidence' as such on the matter." *Sullivan*, 254 P.3d at 245.

Sabo argues that the product liability laws of the two states do not differ such that there is no "true conflict." *But see Jones*, 460 F.Supp.2d at 964, and Notes 2 and 3, supra. However, the Court already has concluded the laws differ. And, once the Court finds that the laws are materially different, both in application and in the respective burdens of proof, the Court's focus is not on the laws' respective differences or lack thereof, but whether there is a conflict between the relevant policies behind the states' laws. Sabo contends that, because California does not impose a cap on noneconomic damages, California's interest is to maximize recovery for its injured residents, and to maximize protection for its consumers from harm caused by dangerous products. On the other hand, Fiskars contends Idaho's policy, both in capping noneconomic damages and providing for additional defenses to a defendant in a product liability action based upon comparative fault seeks to limit liability and prevent large jury verdicts. Thus, Fiskars asserts, Idaho's policy is to strike a fair balance between the interests of consumers and the interests of product manufacturers and sellers.

Sabo contends that Idaho was concerned not about consumers in general, but upon the impact large jury verdicts would have on the ability of Idaho insurance policy holders to obtain a fair price for liability insurance. In contrast, Sabo argues that California has an

**REPORT AND RECOMMENDATION - 10**

interest in protecting its consumers, and because Sabo was domiciled in California, he is entitled to the protections California law affords its consumers.[4]

Neither party delved deep enough into the interests that each law advances. On the one hand, California, by not imposing a cap on noneconomic damages and having a more relaxed test for establishing liability, has an obvious interest in providing a sufficient recovery to its residents who sustain injury due to a product malfunction. Idaho, on the other hand, superficially appears to limit its interest to insured Idaho residents. For instance, in *Kirkand v. Blaine County Medical Center*, 4 P.3d 1115, 1121 (Idaho 2000), the Idaho Supreme Court explained that the $400,000 cap (adjusted for inflation) on noneconomic damages was part of a legislative package

> aimed at addressing concerns that large civil jury verdicts were driving up the cost of liability insurance. As part of the bill which included I.C. § 6–1603, the legislature also included reforms to the liability insurance business so <u>Idaho policyholders</u> would have more control over the prices and conditions of liability insurance; legislation designed to encourage settlements by giving defendants additional incentive to settle and by giving the courts greater latitude to impose sanctions on those bringing frivolous lawsuits; and some limitations on the application of joint and several liability. [citation omitted]. By striking this balance between a tort victim's right to recover noneconomic damages and society's interest in preserving the availability of affordable liability insurance, the legislature 'is engaging in its fundamental and legitimate role of 'structur [ing] and accomodat[ing] the burdens and benefits of economic life.' [citations omitted]. Additionally, it should be noted I.C. § 6–1603 expressly exempts tortfeasors who are found to have acted recklessly or feloniously from the limitation of liability.

(emphasis added.)

---

[4] Sabo appears to be blending steps two and three. On the one hand, he argues that the policy behind the laws are different---presenting a "true conflict." Yet, he then argues that California has a "greater interest" in applying its law, such that there is a "false conflict." The Court, however, examines the respective interests of the two states under step three, once it determines whether a conflict exists.

**REPORT AND RECOMMENDATION - 11**

Thus, Sabo's argument is that Idaho's noneconomic damage cap is aimed at protecting Idaho citizens, and its concern is in protecting insured Idaho residents or companies from excessive financial burdens. Because Fiskars is not a citizen of Idaho engaged in procuring insurance in this state, it is not among the defendants in whose favor Idaho's statute limiting noneconomic damages is primarily directed. Taking the argument one step further, the product simply was sold in Idaho, but presumably manufactured, assembled, and shipped from somewhere outside of Idaho. In other words, Idaho's interest is local—aimed at protecting Idaho defendants from liability for conduct occurring in Idaho. Consequently, the argument is that any significant interest of Idaho in applying its noneconomic damage cap, and more stringent scheme of proving products liability, is difficult to discern and there is no true conflict. In contrast, California is clearly concerned with providing compensation to its residents who suffer injury, and Sabo presents that argument in support of his assertion that California, because of its lower burden of proof under its products liability scheme and its lack of any noneconomic damage cap, has a greater interest in advancing its laws in this case---thus, no true conflict, or a "false conflict."

But Idaho's law limiting noneconomic damages and providing more defenses for product manufacturers, although ostensibly aimed at protecting the availability and affordability of liability insurance for Idaho citizens, has a flip side. By establishing more protections for a defendant, both in terms of limiting noneconomic damages and providing a more comprehensive product liability scheme, Idaho is declaring also that commercial activity by out of state businesses, as well as resident businesses, is important

and deserves fair treatment and an appropriate incentive. A state has a legitimate interest in attracting out-of-state companies to do business within the state, or in this case, to sell its products here. *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 530 (Cal. 2010). So, too, does a state want to advance the opportunity of its state residents to obtain the products and services offered by out-of-state companies at a fair price. *McCann*, 225 P.3d at 530. By protecting out-of-state companies from large jury verdicts and making it more difficult to prove product liability, the state of Idaho is enabling its residents to enjoy the fruits of that protection---more products will be sold and available here, and perhaps at a better price.

Sabo relies heavily upon his claimed residence in California, and intent for California to be his permanent home. But in *McCann*, the California Supreme Court held it was error to focus solely upon the residency of the respective parties when analyzing whether a true conflict between states' laws exists. In *McCann*, the plaintiff resided in and worked in Oklahoma when he was exposed to asbestos during a two week period. The plaintiff was engaged in observing the construction of a boiler. The defendant designed, manufactured, and provided advice about the installation of the boiler, which called for the application of asbestos insulation. The defendant's headquarters were in New York, and the boiler was manufactured outside of Oklahoma. The plaintiff moved to California, and contracted mesothelioma some fifty years later. He sued the defendant.

*McCann* considered whether Oklahoma's statute of repose, which required such actions to be brought within ten years of the completion of the improvement, applied to bar the plaintiff's action. If California law applied, the plaintiff's complaint was timely,

because California allows such actions to be brought within one year of the date the plaintiff suffered disability and knew or reasonably should have known that such disability was caused by asbestos exposure.

In its decision reversing the California Court of Appeals, the California Supreme Court held that, in focusing on the respective residences of the parties, the appellate court ignored Oklahoma's interest in having local law applied to activities conducted within the state. *McCann*, 225 P.3d at 530. It was error to rely upon the location of the defendant outside of Oklahoma as a basis for determining that Oklahoma lacked an interest in having its statute of repose applied to govern the case. *McCann*, 225 P.3d at 531. The court explained that the ten year statute of repose protects businesses that engage in activities within Oklahoma, as well as commercial entities that conduct activities away from Oklahoma but whose potential liability flows from a plaintiff's interaction with, or exposure to, the improvements in Oklahoma. *Id.* The court held that Oklahoma possessed an interest in having its statute applied. *Id.*

The court next separately analyzed California's interest, and found that it, too, had an interest in compensating an injured resident who contracted the disease and suffered its symptoms while living in California. *Id.* at 532. The court explained that, even though the asbestos exposure occurred outside of California, California's economy and tax revenues would be affected regardless of the site of the physical injury. *Id.* Compensation to California residents would further California's goal of obtaining compensation for residents so that they are not dependent upon state resources for necessary medical, disability, and unemployment benefits. *Id.* at 533. *See also Arno v. Club Med Inc.*, 22

**REPORT AND RECOMMENDATION - 14**

F.3d 1464, 1468 (9th Cir. 1994) (noting that California claims an interest in providing

compensation to its residents).

Similarly, in *Offshore Rental Co., Inc. v. Continental Oil Co.*, 583 P.2d 721 (Cal.

1978), the court concluded that Louisiana, not California law, should govern when the

plaintiff was a California resident although the tort occurred in Louisiana on the premises

of the defendant corporation. Louisiana's "vital interest in promoting freedom of

investment and enterprise within Louisiana's borders" prevailed over California's interest

in compensating residents. *Id*. And in *Arno*, the Court of Appeals for the Ninth Circuit

came to the same conclusion when deciding that French law applied when a California

resident sued her employer, whose corporate offices were based in New York, for a tort

that occurred while she was working in France. 22 F.3d at 1470—71.

Sabo relies also upon *Kasel v. Remington Arms Co., Inc.*, 101 Cal. Rptr. 314 (Cal.

Ct. App. 1972), and *Browne v. McDonnell Douglas Corp.*, 504 F.Supp.514 (N.D. Cal.

1980), for the proposition that "the state of the place of the wrong has little or no interest

in such compensation when none of the parties reside there." In other words, because

Sabo resides in California, and Fiskars resides in Wisconsin, Idaho has no interest in this

matter. Even assuming Sabo considers California his permanent home or domicile, both

*Kasel* and *Browne* are distinguishable upon their facts.

In *Kasel*, the California plaintiff's gun accident occurred in Mexico while he was

on vacation. He had purchased Remington bullets in Mexico, and the bullets were

manufactured by a Remington subsidiary in Mexico. But the plaintiff did not maintain a

residence in Mexico, or otherwise have any ties to Mexico. Defendant Remington, a

**REPORT AND RECOMMENDATION - 15**

large, multinational corporation, advertised heavily in California, sold its products in California, and did business in California. In discussing residency, the court stated that, "[w]here the real issue involved in a case is compensation of the injured person, California courts have tended to apply the law of the place of the injured's domicile . . . . The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there." *Kasel*, 101 Cal. Rptr. at 337. The court found that California's interest in compensating its residents outweighed any interest Mexico might have in regulating its manufacturers when no Mexican citizen was a party, and where Mexican law does not recognize the doctrine of strict liability in tort. *Kasel*, 101 Cal. Rptr. at 338. Further, the court found that the place of the accident was "merely fortuitous," and that California has an added interest in compensating its residents in such circumstances. *Id.* at 338—39.

Similarly, in *Browne,* the place of the accident was fortuitous. There, the plaintiffs were from multiple countries. The suit was brought in California, where the defendant resided. The accident occurred in midair over Yugoslavia, when two planes---one of which was manufactured by McDonnell Douglas in California---collided. All of the plaintiffs' countries of origin had an interest in compensating its residents. In analyzing the choice of law issue, the court found that Yugoslavian law related to proportioning liability applied, but as to strict product liability and wrongful death recovery, California law would apply. *Browne*, 504 F.Supp. at 519.

The court explained that California had no interest in applying its joint and several liability rule upon its resident defendant when all tortfeasors were not subject to

REPORT AND RECOMMENDATION - 16

jurisdiction, and because Yugoslavia's interest in deterring wrongful conduct within its borders would be impaired if its law were not applied to apportion liability among the tortfeasors. *Id.* The court found California's products liability law should apply for the alleged faulty design of the aircraft by a California manufacturer. *Id.* at 517. And, the foreign jurisdictions had no interest in limiting damages to its plaintiffs as against a nonresident defendant, causing California law to apply again on the issue of damages. *Id.* at 518.

Here, in contrast, the place of the accident was not "merely fortuitous." Although the record does not specify how long Sabo had been in Idaho before the accident, he was residing in Idaho, and maintained a second residence in Idaho prior to the accident. Sabo was in Idaho for the purpose of making repairs to a restaurant he and his wife owned and operated in Idaho. Sabo purchased the flashlight in Idaho. Sabo's injuries occurred in Idaho, and he received medical care in Idaho.[5] Sabo was residing in Idaho at the time the complaint was filed, and continues to reside here. Fiskars, although it does not reside in Idaho, sells its products in Idaho and, presumably, markets its products to Idaho consumers.

The issue in this case is not solely the compensation of a California resident for injuries sustained in an accident, but also Idaho's interest in striking a balance between tort recovery and a favorable business climate. By entering Idaho, living here, and considering himself a resident even though he considers California his "permanent"

---

[5] The court noted this in its order transferring venue, because the medical providers who would be testifying were Idaho providers.

**REPORT AND RECOMMENDATION - 17**

home, Sabo voluntarily exposed himself to the risks of Idaho and its laws. *See Castro v. Budget Rent-A-Car System, Inc.*, 65 Cal.Rptr.3d 430, 444 (Cal. Ct. App. 2007).

Because the applicable laws of California and Idaho differ, and each state has an interest in having its law applied under the circumstances of the present case, the Court is faced with a "true conflict," and therefore proceeds to step three to determine which state's interest would be more impaired if its law is not applied in this action.

C.     *Which State's Interest Would Be More Impaired?*

The Court must "determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and apply the law of the state whose interest would be the more impaired if its law were not applied." *McCann*, 254 P.3d at 247. The Court is not to engage in a choice between which state has the better or more worthy rule, but to decide "which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *McCann*, 225 P.3d at 534.

The Court finds the analysis applied in *McCann* to be more persuasive here under the facts presented, and that a failure to apply Idaho law would impair Idaho's interest significantly. *Id.* The product failure occurred in Idaho, during which time Sabo resided here. Sabo continues to reside in Idaho.[6] The fact that Fiskars is not an Idaho based company, a fact which Sabo relies upon, is not persuasive for finding that the failure to apply Idaho law would not significantly impair Idaho's interest. Idaho's interest in

---

[6] Sabo's counsel represented at the hearing that the Sabos have continued to live in Idaho and have earned their living from the restaurant since the accident.

**REPORT AND RECOMMENDATION - 18**

applying its products liability law and cap on noneconomic damages applies with equal force to out-of-state businesses that market to Idaho consumers, and sell products in Idaho. Further, Idaho has an interest in assuring commercial entities that do business here that Idaho's laws will be available should they be faced with litigation.

The mere happenstance that Sabo maintains a permanent residence in California, and a residence in Idaho, should not be a factor in displacing Idaho's law which limits liability for product sellers in Idaho. The same rationale would apply even had Sabo returned to California at the time the suit was filed. *See McCann*, 225 P.3d at 534 (displacing Oklahoma law limiting liability for conduct engaged in within Oklahoma, in favor of a jurisdiction to which a plaintiff moved, would impair Oklahoma's interest). A defendant has no way of controlling or knowing where a plaintiff might move to or whether he maintains homes in several locations.

California, although admittedly having an interest in compensating its residents, will not suffer the same impairment. Further, "California decisions have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction." *McCann*, 225 P.3d at 535. Here, we have a product that malfunctioned in Idaho, was sold in Idaho, to an Idaho resident and business owner. Sabo, if he is successful in his suit, will recover damages,

although perhaps not as much as he might if California law applied.[7] Based upon the respective interests of California and Idaho, Idaho's interest in limiting liability for products manufactured or sold within its borders would be more impaired than would California's interests if California law is applied under the facts of this case. *McCann*, 225 P.3d at 536.

## CONCLUSION

The Court therefore concludes that Idaho's interest, as expressed in Idaho Code § 6-1603(1) and Idaho Code §§ 6-1401 –1410 would be more impaired if its law was not applied under the circumstances of this case than would California's interest if its products liability scheme was not applied. The Court recommends that Fiskar's motion be granted, and Idaho's substantive law should apply to the matters before the Court.

---

[7] The parties are engaged in a bit of speculation, because neither knows whether Idaho's cap on non-economic damages will apply to reduce a jury's damage award. The parties are assuming the cap would apply to reduce an eventual damage award that has not yet occurred, and will not occur until a jury determines the amount of damages. Finally, California's interest in seeing its residents compensated will be fulfilled, just not perhaps to the fullest extent if Idaho's cap reduces Sabo's non-economic damage award.

**REPORT AND RECOMMENDATION - 20**

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendant's Motion to Apply Idaho Law (Dkt. 37) be **GRANTED**.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **July 24, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 21**