UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZELJKO SABO,<br><br>                Plaintiff,<br><br>    v.<br><br>FISKARS BRANDS, INC., dba GERBER LEGENDARY BLADES, and DOES 1 through 50, inclusive,<br><br>                Defendants. | Case No. 2:12-CV-00503-EJL-CWD<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

## INTRODUCTION

On July 31, 2014, Chief United States Magistrate Candy W. Dale issued a Report and Recommendation (the "Report") in this matter. The Report sets forth the underlying factual and procedural history of the case and recommends that the Defendant's Motion for Summary Judgment and related Motions to Strike be denied. (Dkt. 100.) Any party may challenge a Magistrate Judge's proposed recommendation by filing written objections to the Report within fourteen days after being served with a copy of the same. 28 U.S.C. § 636(b)(1) and District of Idaho Local Rule 72.1(b). The Defendant in this

case has filed objections to the Report. (Dkt. 102.) The matter is now ripe for the Court's consideration. *See* Local Civil Rule 72.1(b)(2); 28 U.S.C. § 636(b)(1)(B).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." *see also* Fed. R. Civ. P. 72(b). Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* Where, however, no objections are filed the district court need not conduct a *de novo* review. In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties)
> . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005). Furthermore, to the extent that no objections are made, arguments to the contrary are waived. *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation). "When no timely objection

is filed, the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.1974)).

In this case, objections were filed so the Court has conducted a *de novo* review of the Report as to those portions to which Defendant has objected and has also reviewed the Report for clear error on the face of the record. Having done so, the Court finds as follows.

## DISCUSSION

This is a products liability case involving a Gerber RZ700 flashlight.[1] The Plaintiff, Zeljko Sabo, alleges on September 12, 2009 he had the flashlight in his left front pants pocket when the flashlight "spontaneously combusted" sending tiny glass shards in the air and a white or silver colored and chemical-smelling fumes and smoke around his face. (Dkt. 49 at ¶ 13.) Mr. Sabo alleges he suffered a burn to his left thigh and an injury to his left eye.

Two days later, on September 14, 2009, Mr. Sabo went to the emergency room complaining of pain in his left eye and left thigh. Over time, beginning in September of 2009 through approximately May of 2012, Mr. Sabo was seen by several doctors for the irritation/discomfort in his left eye. Mr. Sabo eventually filed this action against

---

[1] The facts of this case are stated in greater detail in the Report which this Court adopts and incorporates here.

Defendant, Fiskars Brands, Inc. ("Fiskars"), who designed, manufactured, and/or distributed the Gerber RX700 flashlight and Gerber CR123A lithium batteries. (Dkt. 1, 49.) The claims raised are for 1) strict products liability – manufacturing/design defect, 2) strict products liability – inadequate warning/failure to warn, 3) negligence – design/manufacture, and 4) negligence – inadequate warning/failure to warn. (Dkt. 49.)

Fiskars then filed the instant Motion for Summary Judgment and related Motions to Strike which are addressed in the Report. (Dkt. 66, 68, 71, 79, 81, 100.) Fiskars' objections to the Report argue it 1) incorrectly concluded that questions of fact exist as to whether the product was defective and as to causation and 2) failed to adequately consider the Motions to Strike. (Dkt. 102.) The Court finds as follows.

1.  **Motion for Summary Judgment**

    A.  **Proof of Product Malfunction or Defect**

    In its objections, Fiskars argues the Report improperly concluded that questions of fact exist as to whether the flashlight malfunctioned or was defective. Fiskars challenges that Mr. Sabo's expert testimony, that of Dr. Samuel Levy, is speculative and lacks sufficient foundation as to the nature or cause of any defect in the flashlight. (Dkt. 102 at 3.) In addition, Fiskars argues the Report improperly relied upon Mr. Sabo's own lay testimony of the incident as proof of the malfunction. (Dkt. 102 at 4.)

    Fiskars does not object to the law stated in the Report that requires the plaintiff in a product liability case to show that the product in question was defective. (Dkt. 102 at 2-4.) Instead, Fiskars' objection goes to the substance of the Report's conclusion itself.

Fiskars disagrees with the Report's determinations regarding the sufficiency of the expert testimony and Mr. Sabo's lay testimony on the question of whether the product was defective – i.e. that the flashlight exploded and there is no other reasonable explanation for the explosion other than a manufacturing defect.[2] This Court has reviewed *de novo* the materials provided by both sides in their filings on the summary judgment motion and finds as follows.

As to Dr. Levy's opinions, the Court finds Fiskars' challenges go to the weight and credibility of his testimony. (Dkt. 66 at 4-5) (Dkt. 78 at 8-10) (Dkt. 79 at 10-12.) While Fiskars maintains that Dr. Levy's testimony lacks sufficient foundation and is speculative, the Court agrees with the Report's conclusion that the evidence presented at this stage of the case is sufficient to give rise to a genuine issue of material fact as to the question of whether the flashlight malfunctioned as a result of a manufacturing defect. Fiskars' arguments concerning Dr. Levy's testimony raise a *Daubert* challenge questioning the admissibility of his expert testimony.

The admissibility of the expert's testimony is admissible so long as it is "based on

---

[2] Fiskars disputes the Report's statement that it has conceded that the cause of the battery venting was due to a short circuit caused by a loose screw bridging the positive terminal of the battery to the negative body of the flashlight, and that improper insertion of the holding screw caused the incident. (Dkt. 102 at 3.) In its initial briefing on the Motion, Fiskars made "temporary concessions" regarding the malfunction solely for purposes of the summary judgment motion essentially acknowledging that on September 12, 2009 something happened to cause the batteries in the flashlight to become heated and one battery vented some of the contents of its interior components into the interior of the flashlight body. (Dkt. 66-1 at 2.) In that briefing, Fiskars maintained its argument that there is insufficient foundation for Dr. Levy's opinion as to what caused the battery venting event. (Dkt. 66-1 at 3.) Although it may have misstated Fiskars' concession, the Report properly addressed Fiskars' argument concerning Dr. Levy. (Dkt. 100 at 15-18.)

**ORDER ADOPTING REPORT AND RECOMMENDATION - 5**

scientific techniques and advanced a material aspect of the government's case." *See*

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *United States*

*v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). To the extent a party questions the validity

of an expert's testimony or opinion, this is a question of weight and credibility that

properly went to the jury. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th

Cir. 1998) (noting that faults in an expert's use of a specific methodology go to the

weight, not admissibility of the testimony).

      Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

      The Ninth Circuit has recognized that *Daubert* requires the district court to

determine whether the expert's testimony reflects "scientific knowledge derived by the

scientific method" and whether his or her work product amounts to "good science."

*Sherwood*, 98 F.3d at 408 (citing *Daubert*). The district court must then determine

whether "the proposed expert testimony is 'relevant to the task at hand,'" meaning that it

logically advances a material aspect of the proponent's case. *Id.* The following factors

may be relevant to the above inquiry: 1) whether the theory or technique the expert

employs is generally accepted in the scientific community; 2) whether it has been

subjected to peer review and publication; 3) whether it can be and has been tested; and 4)

whether the known or potential rate of error is acceptable. *Id.* (citing *Daubert*, 509 U.S. at 591-93). These factors are non-exhaustive and recognize that not every factor will be applicable in every case. *Id.*

Expert testimony is admissible pursuant to the Federal Rules of Evidence, primarily Rule 702. *Domingo ex rel. Domingo v. T.K., M.D.*, 276 F.3d 1083 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 589). Under *Daubert*, the district court acts as a "gatekeeper," excluding "junk science" that does not meet the standards of reliability required under Rule 702. *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997). The trial court accomplishes this goal through a preliminary determination that the proffered evidence is both relevant and reliable. *Daubert*, 509 U.S. at 589-95.

While evidentiary hearings might help the district court to conduct an adequate Daubert analysis, courts are not required to hold such hearings prior to trial in order to discharge their Daubert gatekeeping function. *See United States v. Alatorre*, 222 F.3d 1098, 1100-02 (9th Cir. 2000) ("The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether and when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable....") (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). What is required is that the Court allow counsel "to explore the relevance and reliability of the proposed testimony" prior to its admission. *Id.*

In this case, the Court has reviewed the materials in the record concerning Dr.

**ORDER ADOPTING REPORT AND RECOMMENDATION - 7**

Levy's testimony and finds, for purposes of this motion the Report appropriately considered Dr. Levy's testimony and opinions.³ Having conducted a *de novo* review of the same, the Court is in agreement with the Report's conclusion that Dr. Levy's report gives rise to genuine issues of material fact as to the existence of a product defect. (Dkt. 100 at 16.)

In addition to Dr. Levy's testimony, the Report also relied upon Mr. Sabo's lay testimony as circumstantial evidence demonstrating that a malfunction occurred. (Dkt. 100 at 16-15.) Fiskars objects arguing this lay testimony is insufficient and that neither Mr. Sabo's lay testimony nor any expert testimony has been offered that goes to show a manufacturing defect caused the flashlight to malfunction and/or that would give rise to an inference of a malfunction because there are no other likely causes for the malfunction. (Dkt. 102 at 4.)

To prevail on his claim, Mr. Sabo must prove that the flashlight was defective and must also negate other causes for the defects. *Hansen-Rice, Inc.v. Celotex Corp.*, 414 F.Supp.2d 970, 974 (D. Idaho 2006) (citing *Murray v. Farmers Insurance Co.*, 796 P.2d 101, 106 (Idaho 1990)). "A defect may be shown by circumstantial evidence 'without the benefit of expert testimony.'" *Id.* (quoting *Murray*). "However, expert testimony may be required when the facts are beyond the experience of most jurors." *Id.* (citing *Jensen v. Am. Suzuki Motor Corp.*, 35 P.3d 776, 780-81 (Idaho 2001)).

---

³ The Court will, however, reserve its ruling on the admissibility of such testimony at trial.

**ORDER ADOPTING REPORT AND RECOMMENDATION - 8**

Here, the Court is in agreement with the Report's analysis and conclusion that Mr. Sabo's lay testimony is circumstantial evidence giving rise to the inference that the product malfunctioned sufficient to present a genuine issue of material fact in this case. Additionally, the Court finds no error in the Report's statement that flashlights do not normally spontaneously combust while in the off position in one's pocket. (Dkt. 100 at 15, 17.) That statement goes to the Report's discussion regarding circumstantial evidence of a malfunction wherein the Report accurately articulated Mr. Sabo's burden to show the flashlight malfunctioned and there is no other reasonable explanation for the malfunction other than a manufacturing defect. (Dkt. 100 at 15.)

For the foregoing reasons, the Court denies Fiskars' objections to the Report concerning the conclusion that there is a genuine issue of material fact as to the question of whether there was a product defect.

### B.      Causation

Fiskars objects to the Report's conclusion that a question of fact exists on the issue of causation. Fiskars does not challenge the law cited in the Report but instead argues the Report improperly relied upon lay witness testimony, being that of Mr. Sabo and his wife Camille Lang, in finding a genuine issue of material fact exists as to whether the claimed eye injury, trigeminal neuralgia, was caused by the product defect/malfunction. (Dkt. 102 at 4-7.) Because the injury is complex and not the type of injury about which a layperson can reasonably testify, Fiskars maintains that expert testimony is necessary to show causation. (Dkt. 102 at 5-6.) To that end, Fiskars raised a *Daubert* challenge to the expert

testimony offered in support of causation, arguing that testimony is merely speculative and without adequate foundation. (Dkt. 102 at 5-6.) Here too, this Court has reviewed *de novo* the materials provided by both sides in their filings on the summary judgment motion as to this question and finds as follows.

The Court disagrees with Fiskars' objection that the Report's determination as to the causation question was based on lay testimony. (Dkt. 102 at 5.) The Report considered the lay testimony of Mr. Sabo and his wife to the extent they offered descriptions of what they witnessed of the flashlight malfunctioning event and Mr. Sabo's subsequent symptoms involving eye pain to his left eye following the incident. (Dkt. 100 at 19-22.) The Report then described the various treating physicians that Mr. Sabo saw for his eye pain as well as the proffered experts. While noting the shortcomings in the objective medical evidence as raised by Fiskars, the Report's conclusion regarding the causation element ultimately rested on Mr. Sabo's subjective complaints <u>and</u> the objective medical evidence. (Dkt. 100 at 20-21.) The Court finds the Report's consideration of the lay testimony and that of the treating physicians to have been appropriate for purposes of providing subjective evidence and testimony of the facts surrounding the flashlight malfunction and Mr. Sabo's subsequent complaints of eye pain.

The crux of this objection appears to go more towards the sufficiency of the experts' testimony as to the causation element. In particular, Fiskars' objection challenges the testimony of Dr. Arthur Kowell as lacking in foundation and speculative. Fiskars also raises a direct *Daubert* challenge. (Dkt. 102 at 5-6.) In the materials filed in relation to the

**ORDER ADOPTING REPORT AND RECOMMENDATION - 10**

Motion, Fiskars also challenged the testimony of Dr. David Aizuss, and Dr. Neil Spingarn. (Dkt. 66, 68, 79.) This Court has reviewed these materials challenging the sufficiency of these experts in light of Fiskars' arguments. Having done so, the Court again finds that at least at this stage of the proceeding Fiskars' challenge as to the validity of these experts' testimony and opinions is a question going to their weight and credibility. *Kennedy*, 161 F.3d at 1230-31. Thus, the Court finds the Report properly considered the same and this Court is in agreement with the Report that a genuine issue of material fact has been shown as to the causation element sufficient to overcome summary judgment. That being said, the Court makes no ruling at this time as to the admissibility of these experts' opinions and/or testimony at trial.

### C. Damages

Fiskars argues Mr. Sabo's lay testimony alone is insufficient to create a material issue of fact regarding his entitlement to future lost wages on the basis of total disability. (Dkt. 102 at 7.)[4] In particular, Fiskars argues because Mr. Sabo's alleged injury is complex and not one within the ordinary expertise and experience of a layperson, Mr. Sabo's own testimony is insufficient to support his claim for lost future wages. Fiskars further asserts that Mr. Karl J. Schulze's opinion regarding economic injuries to include lost future wages in the form of total disability is unsupported. (Dkt. 102 at 8.)

---

[4] Fiskars correctly notes that it agrees with the Report's conclusion that Mr. Sabo may be able to present evidence at trial regarding medical and other costs related to his claimed injury; pointing out that its summary judgment argument is limited to seeking dismissal of the lost future wages claims. (Dkt. 102 at 8.)

There is no objection to the legal standard as stated in the Report and this Court agrees and adopts the Report's recitation of the law in Idaho for damages for lost earnings and future wages. (Dkt. 100 at 22.) Thus, to prove damages for lost future wages/earnings Mr. Sabo must show those damages with reasonable certainty the extent to which his future earning power was impaired. Such a showing cannot be based upon speculative evidence or conjecture.

In support of his claim, Mr. Sabo has offered Mr. Schulze's report claiming economic damages for his lost wages for the period of time following the incident in September of 2009 until Mr. Sabo retired at the predicted age of 70 years old in 2026. (Dkt. 74, Ex. P.) As far as Mr. Schulze's report is concerned, the Court finds any challenge to the figures stated therein go to the weight and credibility of the analysis.

Fiskars' objection here goes more to the lack of evidence showing Mr. Sabo is permanently disabled and unable to not only work as a welder but from doing any income producing work. (Dkt. 102 at 8.) The Report concluded that Mr. Sabo could offer lay testimony to support his claim that he can no longer work as a welder and that, coupled with Mr. Schulze's report calculating future damages, was sufficient to overcome summary judgment. (DKt. 100 at 2-24.) This Court agrees.

Mr. Sabo can testify as to his current condition as well as his work as a welder. *See* Fed. R. Evid. 701 and *Bailey v. Sanford*, 86 P.3d 458, 465 (Idaho 2004). For purposes of this Motion, the fact that Mr. Sabo's eye condition, trigeminal neuralgia, may be more complex than other types of injuries does not eliminate the relevance of his testimony

both as to the severity of the condition as well as his own personal knowledge of the demands of his occupation.[5]

Additionally, other potential witnesses may have testimony helpful to the jury regarding the condition of trigeminal neuralgia and its physical impact on Mr. Sabo, such as retained expert neurologist Dr. Kowell, as well as Mr. Sabo's treating physicians who could testify as to Mr. Sabo's particular injury. Fiskars argued on summary judgment that Dr. Kowell's testimony should be disregarded as it lacks foundation. (Dkt. 66-1 at 15.) As previously determined, at this stage the Court finds Dr. Kowell's testimony to be sufficient to be considered on this Motion. Whether his testimony is ultimately allowed at trial is not determined at this time.

In sum, the Court finds the testimony of the treating physicians and Dr. Kowell regarding Mr. Sabo's eye condition together with Mr. Sabo's own lay testimony and Mr. Schulze's report are sufficient, at this stage, to give rise to a genuine issue of material fact regarding Mr. Sabo's claim for lost future wages.

## 2. Evidentiary Objections

### A. Motions to Strike

Fiskars objects to the Report's failure to consider a majority of the evidentiary objections it presented on summary judgment because it concluded that expert testimony was not necessary to create a genuine issue of material fact as to the existence of a

---

[5] In so ruling, the Court makes no determination as to whether any such particular testimony is admissible at trial.

**ORDER ADOPTING REPORT AND RECOMMENDATION - 13**

product defect, causation for the neurological condition, and damages for lost future wages. (Dkt. 102 at 9.)

The Report considered Fiskars' Motions to Strike and resolved the same on the basis that it did not rely upon the objected to materials in reaching its conclusion on summary judgment. (Dkt. 100 at 25-26.) The Court agrees with the Report's consideration of the Motions to Strike given the objected to materials were not relied upon. To the extent this objection goes to the substance of the evidence at issue in the Motions to Strike, the Court has addressed those matters above.

### B. Judicial Notice

Fiskars further argues the Report erred in granting Mr. Sabo's request to take judicial notice of Administrative Law Judge Donna Shipps' decision ("ALJ decision"). Fiskars claims the Report incorrectly concluded that it could take judicial notice of the ALJ decision under Federal Rule of Evidence 201(a) and (b) for purposes of summary judgment and, further, that the ALJ decision should not be admissible at trial as evidence supporting Mr. Sabo's claim for total disability.

On January 17, 2013, ALJ Shipps issued an Order and Decision concerning Mr. Sabo's application for social security benefits. (Dkt. 74-11, Ex. M.) That decision found that Mr. Sabo had been "disabled" since December 1, 2009 as that term is defined in the Social Security Act. The Report states that it did not rely upon the ALJ's decision but goes on to conclude that the court may take judicial notice of an administrative law judge's decision pursuant to Rule 201. (Dkt. 100 at 26-27.) On that basis, the Report

overruled Fiskars' objection and granted Mr. Sabo's request.

Rule 201 governs judicial notice of an adjudicative fact and provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Fiskars argues the facts relied upon in ALJ Shipps' opinion are in dispute in this litigation as well as the conclusion as to the ultimate liability issue – whether Mr. Sabo suffered a permanent and totally disabling injury resulting from a defect/malfunction of the flashlight. (Dkt. 102 at 10.) Thus, Fiskars maintains that Mr. Sabo cannot use the ALJ decision, instead of an expert, to prove causation or damages of lost future wages.

It is true that under Rule 201 the Court can take judicial notice of an adjudicative fact that is not subject to reasonable dispute if it is generally known or can be accurately and readily determined. Thus, the Court can take judicial notice of the undisputed fact that the ALJ decision exists but not the truth of the facts recited therein as those matters are in dispute in this case. *See Transmission Agency of N. Calif. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n. 3 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). With that clarification, the Court finds the Report is not in error in its conclusion concerning judicial notice of the ALJ decision for purposes of this Motion. Again, the ALJ decision was not relied upon in ruling on the Motion for Summary Judgment. The Court makes no

ruling at this time as to whether the ALJ decision would be admissible at trial.[6]

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that the Report and Recommendation (Dkt. 100) shall be **INCORPORATED** by reference and **ADOPTED** in its entirety as stated herein and the Court **ORDERS** as follows:

1) Defendant's Motions for Summary Judgment (Dkt. 66) is **DENIED** as stated herein.

2) Defendant's Motions to Strike (Dkts. 68, 79, 81) are **DENIED**.

3) Defendant's Motion in Limine (Dkt. 71) is **ADMINISTRATIVELY DENIED**. Defendant is granted leave to renew the same, if necessary, upon the resetting of any trial date in this matter.

DATED: **September 2, 2014**

Honorable Edward J. Lodge
U. S. District Judge

---

[6] The admissibility of this document, as well as other evidence, at trial has been raised in a Motion in Limine. (Dkt. 71.) For administrative purposes only and in light of the upcoming settlement conference, the Court will deny the Motion in Limine at this time but will grant Fiskars leave to renew the Motion based upon the briefing already submitted in the event the settlement conference is unsuccessful and a new trial date is set.